UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KMF SERVICES, LLC d/b/a DELTA
PAYMENTS, a Florida limited liability
company, and FRANCES GRACE, LP, a
Florida limited partnership,

        Plaintiff,

v.

Case No.: 3:23-cv-815

FISERV, INC., a Wisconsin for-profit
corporation; CARDCONNECT, LLC, a
Wisconsin for-profit corporation; and
IGNITE PAYMENTS, LLC, a Texas limited
liability company.

        Defendants.

_____/

## MOTION FOR PRELIMINARY INJUNCTION AND SUPPORTING MEMORANDUM OF LAW

Plaintiffs, KMF SERVICES, LLC d/b/a DELTA PAYMENTS ("KMF") and FRANCES GRACE, LP ("FRANCES GRACE") (collectively "Plaintiffs"), by and through their undersigned counsel, and, pursuant to Fed. R. Civ. P. 65(a) and Local Rule 6.02, hereby file their Motion for Preliminary Injunction and Supporting Memorandum of Law ("Motion") against FISERV, INC., ("FISERV"), CARDCONNECT, LLC, ("CARDCONNECT"), and IGNITE PAYMENTS, LLC, ("IGNITE") (collectively "Defendants") moving this Court for an immediate preliminary injunction enjoining Defendants as set forth below and as supported by the sworn testimony submitted herewith:

1.	Plaintiffs have filed their Verified Complaint and contemporaneously herewith file the Affidavit of Kent Flannery in support of this Motion.

2.	Plaintiffs allege breach of contract and unjust enrichment claims for which injunctive relief is proper.

3.	Plaintiffs, KMF SERVICES d/b/a DELTA PAYMENTS, LLC and FRANCES GRACE, LP are entitled to a preliminary injunction to prevent Defendants from continuing to violate the Agreement, by way of $18,427.97 monthly deductions from the amounts due to Plaintiffs pursuant to the Agreement, and in turn causing irreparable harm to Plaintiffs' substantial relationships and goodwill it has formed and maintained with those paid for services related to the amounts collected.

4.	All of the factors under Fed. R. Civ. P. 65(a) and Local Rule 6.02 to be considered in granting a preliminary injunction have been satisfied. Plaintiffs have established a substantial likelihood of success on the merits of their breach of contract and unjust enrichment claims. Plaintiffs will suffer irreparable harm absent injunctive relief. The balancing of hardships weighs in favor of granting Plaintiffs' Motion for Preliminary Injunction. Moreover, public interest favors granting injunctive relief.

5.	Plaintiffs are seeking injunctive relief in good faith and to preserve the status quo until this matter can be set for a final hearing on the merits. Defendants will continue to deduct funds at a rate of at minimum $18,427.97 per month unless prohibited by this Court.

6.	Due to the immediate and irreparable nature of the Defendants' conduct and actions, this Court should exercise its discretion and not require the posting of a bond for the Preliminary Injunction to issue. Plaintiffs have a clear right to the monetary funds Defendants seek to wrongfully collect.

7. In the alternative, Plaintiffs respectfully request that if the Court does not grant a preliminary injunction, that an expedited hearing be set so that the issues presented herein may be resolved at the earliest possible opportunity.

WHEREFORE, Plaintiffs, KMF SERVICES, LLC d/b/a DELTA PAYMENTS ("KMF") and FRANCES GRACE, LP, respectfully move this Court to grant their Motion for Preliminary Injunction and issue a proposed order enjoining Defendants from any further deductions under the Agreements, and from engaging in any further conduct or activity which constitutes a violation of the terms of the Agreements identified in the Verified Complaint, together with such other and further relief as this Court deems just and proper.

## MEMORANDUM OF LAW

### I. FACTUAL BACKGROUND

On or about May 18, 2015, FRANCES GRACE, LP entered into the Launch Compensation Plan, ("2015 Agreement"), with IGNITE PAYMENTS, LLC for the sale of credit card processing services, payable by monthly residual payments. A true and accurate copy of the 2015 Agreement is attached hereto as Exhibit A. On June 7, 2019, non-party HUNTER GRACE, LLC, ("HUNTER GRACE"), entered into the Assignment, Assumption, and Consent Agreement ("Assignment Agreement") with KMF SERVICES, LLC and CARDCONNECT, LLC to assign the Premier Agent Agreement ("PA Agreement") to KMF and obtain the consent of CARDCONNECT to the assignment of the same. A true and accurate copy of the Premier Agent Agreement and the Assignment Agreement is attached hereto respectively as Exhibits B and C.

Pursuant to Sections 1 and 2 of the PA Agreement, CARDCONNECT consented to KMF stepping in the place of HUNTER GRACE by way of assignment of "all of [HUNTER GRACE's] rights, title and interests in and under the [PA] Agreement to Assignee, [KMF], and Assignee accept[ed] the assignment of Assignor's, [HUNTER GRACE's], rights and interests in the [PA] Agreement and assume[d] all of Assignor's obligations and liabilities under the [PA] Agreement."[1]

On December 29, 2022, CARDCONNECT sent an Agent Notice to Plaintiffs regarding an accounting error, specifically its miscalculation of the Gross Processing Revenue resulting in residual overpayment for a period of approximately four (4) years, dating back through January 2018. A true and accurate copy of the Agent Notice is attached hereto as Exhibit D. On or about May 8, 2023, CARDCONNECT sent an email correspondence, ("May 8 Correspondence") adding specificity to the "Incorrect Calculation of Gross Processing Revenue" ("Incorrect Calculations") in the amount of $643,392.63, spanning from January 2018 through December 2022. A true and accurate copy of the May 8 Correspondence is attached hereto as Exhibit E.

Pursuant to the May 8 Correspondence, CARDCONNECT would charge and collect the Incorrect Calculations in their entirety from Plaintiffs in equal installments over the course of the next seventeen (17) months in an effort to rectify its error and shift resulting damages to Plaintiffs. Plaintiffs immediately disputed the aforementioned charge and collection, and moreover, on or about May 12, 2023, Plaintiffs sent their Notice of Anticipated Breach and Denial of the Incorrect Calculations Recovery ("Notice and Denial") demanded by Defendants. A true and accurate copy of the Notice and Denial is attached hereto as Exhibit F.

---

[1] IGNITE PAYMENTS is a payment platform of FISERV. CARDCONNECT is a payment platform of FISERV and a successor in interest to IGNITE PAYMENTS pursuant to the Assignment Agreement. Moreover, upon information and belief, FISERV acquired FIRST DATA INDEPENDENT SALES, ("FDIS") on or about January 16, 2019.

Section 7.3 of both the 2015 Agreement and PA Agreement, (collectively "Agreements") governing the Incorrect Calculations require that Defendants, respectively, "bear the risk for Merchant Losses (other than those caused by the gross negligence or willful misconduct of Agent or Agent Personnel) and **shall not deduct such Merchant Losses from any amounts due to Agent under this Agreement**." (emphasis added). Section 7.2 of both the 2015 Agreement and PA Agreement obligates Defendants respectively to make residual payments to the Plaintiffs for merchant accounts boarded by Plaintiffs.

Moreover, Section 10.2 of both the 2015 Agreement and PA Agreement includes a contractual statute of limitations of commencement "within one year after the earlier of (i) the date on which such party knew or should have known of the first alleged act, omission or violation, or (ii) with respect to obligations that do not survive termination of [the] Agreement, the date of termination of [the] Agreement."

Section 10.4 of both the 2015 Agreement and PA Agreement provides that,

> Except as set forth in this Agreement, **in no event shall either party**, its parents, Affiliates or any of its or their directors, officers, employees, agents or sub-contractors **be liable under any theory of tort, contract, strict liability or other legal or equitable theory for lost profits, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is hereby excluded by agreement of the parties regardless of whether such damages were foreseeable or whether either party or any entity has been advised of the possibility of such damages**. (emphasis added).

Despite the foregoing provisions of the Agreements, on May 20, 2023, Defendants deducted $18,427.97 from Plaintiffs' monthly residual payments to recover their Merchant Losses and/or lost profits resulting from their Incorrect Calculations, occurring over a span dating back at minimum, four (4) years. To date, Defendants have charged $643,392.63 against Plaintiffs and will continue to deduct $18,427.97 each month from residual payments due to Plaintiffs until the

5

aforementioned charge balance is satisfied. In its May 8 Correspondence, CARDCONNECT acknowledged that "collection of these overpaid residuals could impact your business…." and it has and will continue to do just that. Plaintiffs have paid out various non-parties for services related to the Incorrect Calculations dating back through January 2018 which will undoubtedly be affected by the Defendants attempts to circumvent its errors and place the blame and thereby damages on Plaintiffs.

II.     ARGUMENT

Federal Rule of Civil Procedure 65 grants courts the authority to issue preliminary injunctions in an effort to preserve the relative positions of the parties. Fed. R. Civ. P. 65; *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). The purpose of a preliminary injunction is "to keep the status quo for a merits decision." *Vital Pharmaceuticals, Inc. v. Alfieri*, 23 F.4th 1282, 1290 (11th Cir. 2022). Entry of a preliminary injunction is proper if Plaintiffs show: (1) a substantial likelihood that it will prevail on the merits; (2) it will suffer irreparable injury if the injunction is not issued; (3) the potential injury to it outweighs the possible harm to Defendant; and (4) the injunction is not adverse to the public interest. *Keister v. Bell*, 879 F.3d 1282, 1287 (11th Cir. 2018); *Four Seasons Hotels And Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1209-10 (11th Cir. 2003); *Cumulus Media, Inc. v. Clear Channel Commc'ns, Inc.*, 304 F.3d 1167, 1171 and n.1 (11th Cir. 2002); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998); *Carillon Imps., Ltd. v. Frank Pesce Int'l Group Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997)(per curiam).

When considering granting a preliminary injunction to preserve the status quo, Courts may consider the four factors on a "sliding scale, such that if one factor weighs heavily in favor of a party, the other factors may become less important." *Energy Professionals, LLC v. Pomella*, 8:15-

cv-02470-MSS-EAJ, 2015 WL 10960876, *3 (M.D. Fla. Oct. 29, 2015); *see also Florida Democratic Party v. Scott*, 215 F.Supp.3d 1250, 1256 (N.D. Fla. 2016) (explaining that "[w]hile all of these elements must be established, none is controlling"). Specifically, each factor is analyzed using a sliding scale that balances the other factors in light of the particular case.[2] *Anheuser-Busch, Inc. v. A-B Distribs.*, Inc., No. 96-CV-241,1995 WL 17108555, at *4-5 (M.D. Fla. Apr. 6, 1995).

### a. There is a Substantial Likelihood that Plaintiffs will Ultimately Prevail on the Merits of their Claims.

In their Verified Complaint, Plaintiffs allege two counts in addition to injunctive relief: (1) Breach of Contract and (2) Unjust Enrichment. Plaintiffs already have sufficient evidence that they will succeed on each claim against Defendants, although they need to only make out such a case for one claim for this Motion to succeed. *See Schiavo ex. Rel. Schindler v. Schiavo*, 357 F. Supp. 2d 1378, 1384 (M.D. Fla. 2005) (holding that to obtain temporary injunctive relief, a plaintiff must show a substantial likelihood of success on at least one claim). The Court need not "find that the evidence positively guarantees a final verdict in [Plaintiffs'] favor," but need only to show it is *substantially likely* to prevail as to one or more of its claims. *Levi Strauss & Co.,* 51 F. 3d at 985.

Section 11.9 of the Agreements requires that the Agreements "shall be governed by the laws of the State of New York." The essential elements for pleading a cause of action to recover damages for breach of contract under New York law are (1) the existence of a contract; (2) the plaintiff's performance pursuant to the contract; (3) the defendant's breach of his or her contractual obligations; and (4) damages resulting from the breach. *See Stennet v. Goldberg & Cohn, LLP,*

---

[2] In considering a request for a preliminary injunction, the Court may rely on hearsay materials that may not be admissible to support an order of permanent injunctive relief "if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982,985 (11th Cir. 1995) (citations omitted).

2020 N.Y. Misc. LEXIS 10192 (N.Y. Sup. Ct., Nov. 23, 2020); *Elisa Dreier Reporting Corp. v. Global Naps Networks, Inc.*, 84 A.D.3d 122, 127, (2d. Dept. 2011); *Brualdi v. IBERIA, Lineas Aereas de España, S.A.*, 79 A.D. 3d 959, 960 (2d. Dept. 2010); *JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 69 A.D. 3d 802, 803 (2d. Dept. 2010); *Furia v. Furia*, 116 AD2d 694, 695, 498 (2d. Dept. 1986).

Here, as laid out in the Verified Complaint, Plaintiff, FRANCES GRACE, entered into the 2015 Agreement with IGNITE PAYMENTS for the sale of credit card processing services. Moreover, KMF entered into the PA Agreement with FDIS and thereby its successors in interest FISERV and CARDCONNECT by way of the Assignment Agreement, again for the sale of credit card processing services. Throughout their relationship with Defendants, Plaintiffs fully performed pursuant to the Agreements as addressed herein, making significant sales of Defendants' credit card processing services, evidenced by the residual payments at issue in this Action.

Pursuant to Section 7.2 of the Agreements, Defendants are obligated to make residual payments to the Plaintiffs for merchant accounts boarded. Sections 7.3 and 10.4 of the Agreements govern the Incorrect Calculations, specifically by way of Merchant Losses and/or lost profits and precluding the deduction of the same from any amounts due to the Plaintiffs. Moreover, the Agreements include a contractual statute of limitations limiting commencement to "within one year after" the date the party knew or should have known of the first alleged act, omission or violation. Here, Defendants should have known of those Incorrect Calculations claimed at minimum annually pursuant to standard business accounting practices and account reconciliations for tax purposes. Irrespective of the foregoing, Defendants failed to assert its claim or notify Plaintiffs of any error whatsoever for a period of up to four (4) years of incorrect Gross Processing Revenue calculations.

Despite Plaintiffs' full performance under the Agreements, Defendants breached their contractual obligations by charging Plaintiffs $643,392.63 in an effort circumvent their damages due to their own internal accounting errors. Moreover, Defendants began monthly reductions in residual payments owed to Plaintiffs pursuant to the Agreements, by way of $18,427.97 monthly reductions beginning May 20, 2023. It is important to note that Plaintiffs utilize residual payments to payout non-parties related to Plaintiffs' performance under the Agreement, which to date have been paid out according to Defendants' prior residual payments, Incorrect Calculations included. Here, Plaintiffs have been and continue to be damaged by Defendants' unauthorized $643,392.63 charge and $18,427.97 monthly residual payment deductions by way of deprivation of their funds and moreover, inescapable damage to its outside business relationships with related non-parties which have been paid amounts determined pursuant to Defendants' Incorrect Calculations.

In the alternative to its Breach of Contract Counts II and III, Plaintiffs plead unjust enrichment in their Verified Complaint pursuant to Plaintiffs' provision of labor and services consisting of the selling of credit card processing services at the request of the Defendants. "A claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) *citing Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004).

Here, Defendants had knowledge of, assented to, accepted, and retained the benefits of the significant merchant accounts acquired by Plaintiffs without paying a sum representing the reasonable value of benefit conferred pursuant to its $643,392.63 charge and subsequent monthly residual payment deductions. It would be inequitable for Defendants to retain possession and

benefit of the deducted residual payments resulting from Defendants own accounting errors. Moreover, Defendants' possession of the improper residual deductions as addressed herein have and will continue to unjustly enrich Defendants.

### b. Plaintiffs will Suffer Irreparable Injury if the Preliminary Injunction is not Granted.

"The focus of preliminary injunctive relief is on maintaining long standing relationships and preserving the goodwill of a company built up over the course of years of doing business." *North Am. Prod. Corp.*, 196 F.Supp.2d at 1230-31. The damage to Plaintiffs' existing and prospective business relationships with non-parties, as well as the erosion of Plaintiffs' goodwill in the nationwide credit card processing sector, is immediate, irreparable, and not readily quantifiable such that injunctive relief is the only appropriate remedy. *See Id.*

"[U]nder Florida law, a court may presume irreparable injury in cases involving tortious interference with business relationships and misappropriation of trade secrets." *Morgan Stanley Smith Barney, LLC v. Abel*, 318CV00141J34MCR, 2018 WL 515348, at *4 (M.D. Fla. Jan. 23, 2018); *Dotolo v. Schouten*, 426 So. 2d 1013, 1015 (Fla. 2d Dist. Ct. App. 1983). Moreover, "[i]rreparable harm is presumed when . . . solicitation of customers occurs." *Lynch v. Silcox*, No. 01-8800-CIV, 2001 WL 1200656, at *5 (S.D. Fla. Oct. 4, 2001) (citing F.S.A. § 542.33(2)(a); *see also Autonation, Inc. v. O'Brien*, 347 F. Supp. 2d 1299, 1306 (S.D. Fla. Dec. 2, 2004) (in "highly competitive" industry, injunction is proper where defendant could implement knowledge of prior employer in position with direct competitor). The nature of the particular breach of contract at issue here renders harm similar to tortious interference with business relationships and solicitation as laid out above, resulting in a domino effect of irreparable damage to outside non-party relationships resulting from Defendants' breach. Should Defendants continue to make monthly deductions from Plaintiffs' monthly residual payments due, Plaintiffs will be forced to address

these deductions with the associated non-parties as laid out herein. Kent Flannery, authorized agent of both KMF and FRANCES GRACE, testifies to the specific nature of the irreparable harm to the Plaintiffs should this Court fail to grant this Motion in his Affidavit, ("Flannery Affidavit") attached hereto as Exhibit G.

    **c. The Potential Injury to Plaintiffs and Other Non-parties if the Preliminary Injunction is not Granted Outweighs any Potential Harm to Defendants if the Preliminary Injunction is Granted.**

Companies should be confident that the law protects their legitimate business interests, including their business relationships which are developed over years of substantial time, effort, and expense. The threatened injury to Plaintiffs and the loss of business relationships and past residuals far outweighs the threatened harm to Defendants. In fact, Plaintiffs contend there is no threatened harm to Defendants by enjoining further residual deductions and breaches of the Agreements, as Defendants have already paid out their Incorrect Calculations and have been operating for up to four (4) years without those funds without incidence and apparently without noticing for an extended period of time. Plaintiffs' Motion seeks merely to maintain the status quo and as such does not pose a threat of irreparable harm to Defendants, apart from merely postponing their collection efforts through the pendency of this litigation. In contrast, Plaintiffs' damages pursuant to significant residual payment deductions is detrimental to not only Plaintiffs' operations but also its outside business relationships, as laid out in Flannery's Affidavit. [Ex. G].

    **d. A Preliminary Injunction is not Adverse to the Public Interest.**

Finally, a preliminary injunction will not disserve the public interest. *See Dermworx, Inc. v. Cooper*, Case No. 09-60284-CIV, 2009 WL 1726333 at *7 (S.D. Fla. 2009) (finding that an injunction will not disserve the public interest where it will preserve the status quo between the parties while during the pendency of this litigation). Moreover, "[t]he public has an interest in

protecting and enforcing valid contracts." *Ryan, LLC v. Evans*, 8:12-CV-289-T-30TBM, 2012 WL 1532492 at *9 (M.D. Fla. Mar. 20, 2012), report and recommendation adopted, 8:12-CV-289-T-30TBM, 2012 WL 1551285 (M.D. Fla. Apr. 30, 2012).

A preliminary injunction in favor of Plaintiffs will not disserve the public interest because it would only be designed to preserve the status quo between the parties during the pendency of this litigation. Moreover, to the contrary, the public interest will be served by the granting of an injunction, for such relief will uphold and promote the validity and integrity of enforcement of legal and binding contracts.

### e. No Bond is Necessary to Protect Defendants' Interests.

Fed. R. Civ. P. 65(c) requires the movant to deposit a bond as security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The bond requirement of Rule 65(c), however, is appropriately waived in certain circumstances. *See Baldree v. Cargill, Inc.*, 758 F.Supp. 704 (M.D. Fla. 1990), aff'd, 925 F.2d 1474 (11th Cir. 1991) (finding that the district court has discretion to waive bond requirement imposed by Rule 65(c)). The factors to consider include the potential loss to the defendant due to the injunction, the hardship to the plaintiff due to expense of the bond, and the impact of the bond on federal rights. *Johnston v. Tampa Sports Auth.*, 2006 WL 2970431, at *1 (M.D. Fla.) (citations omitted).

Given whatever harm Defendants may incur during this period is essentially self-inflicted and moreover, based upon the plain and obvious nature of Defendants' breach of the Agreements, and the unlikelihood of an injunction being wrongfully entered, Plaintiffs respectfully submit that a very minimal bond, if any, is warranted under the circumstances.

### III. CONCLUSION

Pursuant to the foregoing, Plaintiffs, KMF SERVICES, LLC d/b/a DELTA PAYMENTS ("KMF") and FRANCES GRACE, LP respectfully move this Court to grant their Motion for Preliminary Injunction and issue a proposed order enjoining Defendants from any further deductions from residual payments due to the Plaintiffs under the Agreements, and from engaging in any further conduct or activity which constitutes a violation of the terms of the Agreements identified in the Verified Complaint, together with such other and further relief as this Court deems just and proper.

Dated this 13th of July, 2023.

Respectfully submitted,

**MATHIS LAW GROUP**

/s/ JESSICA A. CAPPOCK, ESQ.
**JESSICA A. CAPPOCK, ESQ.**
Florida Bar No.: 1028337
jcappock@mathislawgroup.com
ybecquer@mathislawgroup.com
**JESSICA L. KLEIN, ESQ.**
Florida Bar No.: 0063412
jklein@mathislawgroup.com
acolmenares@mathislawgroup.com
**BRIAN K. MATHIS, ESQUIRE**
Florida Bar No.: 0046223
bmathis@mathislawgroup.com
jkirkland@mathislawgroup.com
515 E. Las Olas Blvd., Suite 120
Ft. Lauderdale, FL 33301
Mailing Address: P.O. Box 91657
Lakeland, FL 33804
T: (954) 616-4404
F: (954) 616-4405
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY the foregoing was/will be served upon the above-named Defendant(s) via Service of Process.

/s/ Jessica A. Cappock