## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

KMF SERVICES, LLC d/b/a DELTA
PAYMENTS, a Florida limited liability
company, and FRANCES GRACE, LP,
a Florida limited partnership,

                 Plaintiffs,

   v.

FISERV, INC., a Wisconsin for-profit
corporation; CARDCONNECT, LLC, a
Pennsylvania for-profit corporation;
and IGNITE PAYMENTS, LLC, a
Texas limited liability company,

                 Defendants

Case No. 3:23-cv-815

### DEFENDANTS' MOTION TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), Defendants Fiserv, Inc. ("Fiserv"), CardConnect, LLC, and Ignite Payments, LLC (collectively, CardConnect, LLC and Ignite Payments, LLC are "CardConnect", and together with Fiserv, "Defendants") respectfully ask this Court to dismiss Plaintiffs' Complaint with prejudice because Plaintiffs fails to state a claim for which relief can be granted against any Defendant. In support of this Motion, Defendants state as follows:

### PRELIMINARY STATEMENT

This action arises out of two agent agreements (the "Agreements") under which Plaintiffs agreed to sell CardConnect's payment processing services to

91317963.10

merchants in exchange for a certain percentage of the revenue generated by merchant accounts Plaintiffs successfully onboarded ("Residuals"). These Agreements **_specifically allow_** CardConnect to deduct certain credit card fees and assessments prior to calculating Plaintiffs' monthly Residual payments and **_do not limit_** the timeframe in which CardConnect must deduct these amounts. These Agreements also explicitly state that CardConnect can recoup any amounts Plaintiffs owe under the Agreements from Plaintiffs' monthly Residuals.

At the end of 2022, CardConnect discovered it had inadvertently not withheld certain credit card network fees and assessments (collectively, "Unpaid Fees"), resulting in incorrect calculations of Plaintiffs' monthly Residuals and gross overpayments to Plaintiffs from 2018 to 2022. CardConnect notified Plaintiffs of these overpayments and that CardConnect would begin deducting the Unpaid Fees from Plaintiffs' monthly Residuals over seventeen months, starting in May of 2023. Even though the Agreements explicitly allow CardConnect to deduct credit card network fees and assessments and to recoup these amounts from Plaintiffs' account, Plaintiffs allege CardConnect (and its predecessor Ignite Payments, LLC) and unrelated party Fiserv have somehow breached the Agreements and have been unjustly enriched for attempting to recoup the Unpaid Fees to which CardConnect is legally entitled. These claims fail based on the plain language of the Agreements and because Plaintiffs' claim for unjust enrichment is duplicative of their breach of contract claim.

Indeed, Plaintiffs rely on several inapplicable provisions of the Agreements,

2

completely ignoring the unambiguous definition of Gross Processing Revenue that clearly allows CardConnect to deduct credit card fees and assessments from Plaintiffs' monthly Residuals, without any time limitation on when CardConnect can deduct these fees and assessments. Plaintiffs also ignore the unambiguous sections of the Agreements that allow CardConnect to recoup these fees "at any time." Contrary to Plaintiffs' conclusory allegations, this case does not involve Merchant Losses, and Plaintiffs are not entitled to keep more than the bargained-for amount of monthly Residuals simply because CardConnect did not know the credit card network fees and assessments were not properly deducted. To the contrary, if this Court finds that Plaintiffs may keep the overpayments, it is *Plaintiffs* who will be unjustly enriched by receiving more than the Agreements allow. Finally, Defendant Fiserv is not a party (or a successor-in-interest to any party) to the Agreements. Fiserv is therefore not a proper party, and the Court should dismiss Plaintiffs' Complaint with prejudice against all Defendants.

## FACTS ALLEGED

Plaintiffs Frances Grace, LP ("Frances Grace") and KMF Services, LLC ("KMF") (collectively, "Plaintiffs") sell payment processing services to merchants under the terms of the Launch Compensation Plan ("2015 Agreement") and the Premier Agent Agreement ("PA Agreement") (collectively, the "Agreements"), respectively. (Compl. ¶¶ 9-11; Compl. Ex. A[1] "(2015 Agreement") & Ex. B ("PA

---

[1] Both the exhibits to the Complaint and the exhibits to the Agreements are numbered using letters. To avoid confusion, Defendants use "Compl. Ex." when referring to an exhibit to the Complaint and "Ex." when referring to an exhibit to one of the Agreements.

91317963.10

Agreement").) Specifically, Frances Grace entered into the 2015 Agreement with Ignite[2] on May 18, 2015, and non-party Hunter Grace, LLC assigned its rights and obligations under the PA Agreement with First Data Independent Sales ("FDIS")[3] to KMF on June 7, 2019. (*Id*; PA Agreement (listing parties as FDIS and Hunter Grace).)

The terms of the Agreements are clear—Plaintiffs agreed to sell CardConnect payment processing services to merchants in exchange for monthly "Residuals" equaling a percentage of the Gross Processing Revenue of active merchant accounts Plaintiffs solicited. (*See* 2015 Agreement, § 7.2(a) & Ex. C, § B; PA Agreement, § 7.2(a) & Ex. C, § A(1)(a).) Both Agreements define Gross Processing Revenue[4] as the income collected on certain merchant accounts **minus** any fees and assessments charged by the credit card networks and do not contain **any language** as to when these charges must be deducted.[5] (*See* 2015 Agreement, p.

---

2 CardConnect is the successor-in-interest to Ignite Payments, LLC due to merger. (See Compl. Ex. C.)

3 Although Plaintiffs allege "upon information and belief" that Fiserv acquired FDIS in 2019, see Compl. ¶ 15, this is incorrect. CardConnect is the ultimate successor-in-interest to FDIS, which was a trade name for CardService International LLC. See PA Agreement, p. 1 (listing the parties to this agreement as Hunter Grace, LLC and "Cardservice International, LLC, a California limited liability company, doing business as First Data Independent Sales ("FDIS")".) Cardservice International LLC completed a name change to Ignite Payments LLC in January 8, 2013, which then merged into CardConnect LLC as of December 31, 2018. Fiserv is therefore not a proper party to this litigation because it is not a party to any Agreement or a successor-in-interest to any party to either Agreement.

4 Although the PA Agreement recognizes two different types of Gross Processing Revenue, named "Gross Processing Revenue – CAAP" and "Gross Processing Revenue – Premier," both allow CardConnect to deduct fees and assessments charged by credit card networks. (See PA Agreement, Ex. A, p. 14.)

5 Although the 2015 Agreement uses "Card Brand" and the PA Agreement uses "Card Organization" in the definition of Gross Processing Revenue, these terms are defined identically in the Agreements and refer to the card brand networks (e.g., Visa and Mastercard). (*See* 2015 Agreement, p. 16; PA Agreement, p. 13.)

4

17; PA Agreement, p. 14.) The Agreements also explicitly note that CardConnect may set off or recoup any and all of Plaintiffs' funds to satisfy Plaintiffs' obligations under the Agreements. (*See* 2015 Agreement, § 7.4; PA Agreement, § 7.4.) And notably, Plaintiffs agreed to "take the action as [CardConnect] may, from time to time, reasonably request in order that the ***purposes*** of [the Agreements] will be ***fully accomplished***." (*See* 2015 Agreement, § 11.7 (emphasis added); PA Agreement, § 11.7 (emphasis added).)

At the end of 2022, CardConnect discovered it had inadvertently not deducted "expenses billed to CardConnect from the card brand networks" from Plaintiffs' monthly Residuals, resulting in overpayments to Plaintiffs. (Compl. Ex. D.) Due to this administrative error and because Plaintiffs were not entitled to receive the overpaid amounts under the Agreements, CardConnect informed Plaintiffs that it would begin collecting these Unpaid Fees monthly, beginning with the April Residuals in May of 2023. (*Id*.) Attempting to improperly keep the Unpaid Fees, Plaintiffs filed this action against Ignite, CardConnect, and Fiserv, arguing Defendants are breaching the Agreements and will be unjustly enriched by collecting these amounts they overpaid Plaintiffs.

## ARGUMENT

Federal Rule of Civil Procedure 12(b)(6) allows the Court to dismiss this action based on Plaintiffs' failure to state a claim upon which relief can be granted. To meet this standard, Plaintiffs must plausibly allege sufficient factual allegations that, when accepted as true, allow the Court to draw a reasonable inference that

91317963.10

Defendants are liable for the misconduct alleged. (*Phoenix Enter. Partners, LLC v. Casey Road Food & Beverage, LLC*, 728 F. App'x 910, 912 (11th Cir. 2018).) However, the Court need not accept legal conclusions couched as factual allegations. (*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).) When an unambiguous contract is at the heart of the parties' disputes, the Court may engage in contract interpretation to grant a motion to dismiss. (*See, e.g.*, *Martinair Holland, N.V. v. Benihana, Inc.*, 780 F. App'x 772, 775 (11th Cir. 2019) (affirming district court's dismissal of breach-of-contract claim when unambiguous contract expressly permitted the challenged conduct).)

Here, Plaintiffs allege they entered into the Agreements with Defendants and subsequently received notice informing them that CardConnect had overpaid them by inadvertently not deducting credit card network fees and assessments from Plaintiffs' monthly Residual payments and would begin recouping the Unpaid Fees monthly starting in May of 2023. (Compl. ¶¶ 9-16). Plaintiffs further allege CardConnect deducted the first amount, as promised, on May 20, 2023, and that Plaintiffs will be detrimentally harmed if CardConnect is allowed to continue deducting the Unpaid Fees because Plaintiffs have paid third parties with the money Defendants overpaid them. (*Id.* ¶¶ 22-27.)

These factual allegations are not sufficient for Plaintiffs to plausibly allege that CardConnect breached the Agreements or has been unjustly enriched because the Agreements unambiguously allow CardConnect to withhold credit card network fees and assessments from Plaintiffs' monthly Residual payments and to

6

recoup or set off any and all of Plaintiffs' funds to satisfy Plaintiffs' obligations. Allowing Plaintiffs to retain a benefit more than what parties contractually agreed upon would unjustly enrich Plaintiffs, not CardConnect. In any event, Plaintiffs' claim for unjust enrichment is duplicative of their breach-of-contract claim because it is based on the same facts and the challenged conduct is expressly covered by the Agreements. The Court should therefore grant Defendants' Motion and dismiss this case with prejudice.

### 1.   Fiserv Is Not a Proper Party to This Case.

It is well-established that a breach-of-contract action may only be maintained against a party to the contract unless the non-signatory is in privity with the plaintiff or has assumed the obligations of the contract. *Ravelombonjy v. Zinsou-Fatimabay*, 632 F. Supp. 3d 239, 260 (S.D.N.Y. 2022).[6] Additionally, a parent company cannot be liable for the contracts of its subsidiaries merely due to its ownership interest. *Maki v. Travelers Co.*, 145 A.D.3d 1228, 1230 (N.Y. Sup. Ct. 2016). Here, Plaintiffs' only allegations related to Fiserv are (1) Fiserv acquired FDIS in 2019; and (2) CardConnect is a payment platform of Fiserv. Compl. ¶¶ 14-15. Neither of these allegations is sufficient to state a claim against Fiserv.

First, CardConnect is the ultimate successor-in-interest to FDIS, which was only a trade name for CardService International LLC. *See* PA Agreement, p. 1; *see*

---

[6] Both Agreements are governed by the laws of the State of New York. (2015 Agreement, § 11.9; PA Agreement, § 11.9.)

*also* LLC Certificate of Amendment, attached as **Exhibit 1**[7] (showing Cardservice International, LLC changed its name to Ignite Payments, LLC in 2013); Certificate of Merger, attached as **Exhibit 2** (showing CardConnect, LLC acquired Ignite Payments, LLC in 2018). Second, although CardConnect is an indirect subsidiary of Fiserv, that relationship alone is insufficient to establish liability. *See Maki*, 145 A.D.3d at 1230.  Fiserv is not a party to either Agreement and is therefore not in privity with Plaintiffs, precluding Fiserv from liability to Plaintiffs for any breach of the Agreements. Finally, Plaintiffs' bare allegation that CardConnect is a payment processing platform of Fiserv is insufficient to show that Fiserv is subject to the Agreements or was unjustly enriched by CardConnect's recoupment of the Unpaid Fees. *Id.* The Court should therefore dismiss Fiserv as an improper party.

      **2.    The Agreements Expressly Allow CardConnect to Deduct Credit Card Network Fees and Assessments from Plaintiffs' Monthly Residual Payments and to Set Off or Recoup Amounts Plaintiffs Owe CardConnect From Plaintiffs' Accounts.**

To recover for breach of contract, a party must show (1) a contract existed; (2) it performed under the contract; (3) the opposing party breached the contract; and (4) the performing party suffered damages as a result. *Islip U-Slip LLC v. Gander Mountain Co.*, 2 F. Supp. 3d 296, 302 (N.D.N.Y. 2014). When a contract is unambiguous, the Court is required to give effect to the intent of the parties as shown by the language of the contract. (*Id.* at 303.) A contract is unambiguous

---

[7] The Court may take judicial notice of public records that are not subject to reasonable dispute without converting a motion to dismiss into a motion for summary judgment. *Univ. Express, Inc. v. U.S. Sec. & Exchange Comm'n*, 177 F. App'x 52, 53 (11th Cir. 2006).

91317963.10

where its terms have a definite and precise meaning as to which there is no reasonable basis for a difference of opinion. (*Id.*)

Here, the Agreements unambiguously allow CardConnect to deduct fees and assessments charged by the credit card networks from Plaintiffs' monthly Residual payments. Specifically, Sections 7.2(a) of the Agreements provide that FDIS and Ignite, both predecessors of CardConnect, shall pay KMF and Frances Grace, respectively, a monthly Residual as detailed in exhibits attached to the Agreements. (2015 Agreement, § 7.2(a); PA Agreement, § 7.2(a).) "Residuals" is defined in the Agreements as the payments due to Plaintiffs. As shown in Exhibit C to the 2015 Agreement and Exhibits C and D to the PA Agreement, Plaintiffs' Residuals are calculated as a percentage of the Gross Processing Revenue from certain merchant accounts successfully boarded by Plaintiffs. (2015 Agreement, Ex. C, §§ A, B; PA Agreement, Ex. C, §§ A(1)(a)-(b) and Ex. D, § A.) Gross Processing Revenue is clearly defined in the Agreements as the income collected on active merchant accounts **minus** credit card network fees and assessments. (*See* 2015 Agreement, p. 17; PA Agreement, p. 14.)

By contrast, "Merchant Losses" are losses CardConnect incurs due to **merchant conduct**. "Merchants Losses" include chargebacks, fines, penalties, and other amounts a merchant must pay for violating the merchant processing agreement (to which Plaintiffs are not parties) and/or the various rules and regulations of credit card networks that merchants must follow. If the merchant does not or cannot pay these amounts, CardConnect as the processor becomes

responsible for them. Because Merchant Losses are generally unrelated to Plaintiffs' sale of payment processing services, it is no surprise CardConnect cannot deduct Merchant Losses from Plaintiffs' monthly Residuals (absent Plaintiffs' gross negligence or willful misconduct). (2015 Agreement, § 7.3; PA Agreement, § 7.3.) **Merchant Losses are not at issue in this case**, so Sections 7.3 do not apply. Rather, as clearly explained in CardConnect's Agent Partner Notice to Plaintiffs, CardConnect inadvertently did not deduct "expenses billed to CardConnect from the card brand networks" from Plaintiffs' Residuals. (Compl. Ex. D.)

While Plaintiffs are correct that CardConnect agreed to pay monthly Residuals to Plaintiffs for the merchant accounts they successfully boarded, these Residuals are **expressly limited** by the amount of fees and assessments CardConnect incurs from the credit card networks based on the unambiguous definition of Gross Processing Revenue. (*See* 2015 Agreement, p. 17; PA Agreement, p. 14.) And because CardConnect inadvertently did not withhold the Unpaid Fees, Plaintiffs received more in monthly Residuals than CardConnect agreed to pay. Neither Agreement contains any language specifying when these charges may be deducted from Plaintiffs' monthly Residuals, so CardConnect did not breach the Agreements by failing to deduct these amounts. Not only did they agree that Defendants could deduct fees and assessments from their monthly Residuals, but Plaintiffs also expressly agreed to cooperate with CardConnect to ensure that the purpose of the Agreements is fully accomplished, which includes

allowing CardConnect to deduct from monthly Residuals the amounts it is rightfully owed under the Agreements. (*See* 2015 Agreement, § 11.7; PA Agreement, § 11.7.) Additionally, Sections 7.4 of the Agreements specifically allow CardConnect to set off or recoup any amount that Plaintiffs owe under the Agreements from Plaintiffs' accounts "at any time." (*See* 2015 Agreement, § 7.4; PA Agreement, § 7.4.) This offset right is "in addition to all other rights and remedies available" under the Agreements.

Beyond CardConnect's unfettered right to deduct the Unpaid Fees as discussed above, Sections 10.2 does not preclude this recovery because CardConnect is not bringing a legal or equitable "action" against Plaintiffs. The plain language of Sections 10.2 shows that the one-year statute of limitation would only apply if CardConnect "commenced" a legal or equitable action against Plaintiffs based on the Agreements. (2015 Agreement, § 10.2; PA Agreement, § 10.2.) That is not the case here. Rather, ***Plaintiffs*** are the ones bringing an action against ***Defendants*** based on the Agreements. CardConnect, on the other hand, does not need to bring a legal or equitable action against Plaintiffs to recoup the Unpaid Fees from Plaintiffs' monthly Residuals, which Sections 7.4 allow CardConnect to offset or recoup "at any time." Sections 10.2 do not limit CardConnect's offset right or its right to deduct card network fees and assessments from Plaintiffs' Residuals.

The limitation-of-liability provisions of Sections 10.4 of the Agreements also do not apply here. The plain language of Sections 10.4 limits a party's liability for

certain damages "[e]xcept as set forth in this Agreement." (2015 Agreement, § 10.4; PA Agreement, § 10.4.) As discussed, the Agreements expressly allow CardConnect to withhold fees and assessments without limitation as to when these charges were assessed. (*See* 2015 Agreement, p. 17; PA Agreement, p. 14.) Moreover, if CardConnect's recoupment of the Unpaid Fees under the Agreements was a type of "damage," it would be properly characterized as a "direct damage," which CardConnect can recover under Sections 10.4. *See Latham Land I, LLC v. TGI Friday's Inc.*, 96 A.D.3d 1327, 1331 (N.Y. Sup. Ct. 2012) (distinguishing direct damages, which are typically expectation damages meant to make a party whole under the terms of a contract, from special or consequential damages, which do not flow directly from the contractual terms and are only recoverable if foreseeable). Accordingly, Sections 10.4 do not apply, and the Court should dismiss Plaintiffs' breach-of-contract claim with prejudice.

### 3.   Plaintiffs' Unjust Enrichment Claim Is Duplicative of Their Breach-of-Contract Claim.

Where a party's claim for unjust enrichment seeks the same relief as a party's breach-of-contract claim, the Court should dismiss the unjust enrichment claim as duplicative. *LG Capital Funding, LLC v. Ubiquity, Inc.*, 2017 WL 3173016, at *3 (E.D.N.Y. 2017).  This is especially the case where claims arise from the same facts and do not allege distinct damages. *Id.* Moreover, New York courts have repeatedly dismissed unjust enrichment claims where a party does not allege that the contracts at issue are invalid and where the challenged conduct is covered by the

91317963.10

contract. *Associated Mortgage Bankers, Inc. v. Calcon Mutual Mortgage LLC*, 159 F. Supp. 3d 324, 337 (E.D.N.Y. 2016).

Here, the Court should dismiss Plaintiffs' unjust enrichment claim as duplicative of their breach-of-contract claim because these claims arise out of the same facts and do not allege distinct damages. *Compare* Compl. ¶ 58 (challenging CardConnect's deduction of overpayment amounts from Plaintiffs' monthly residual payments), *with* Compl. ¶ 66 (same). This Court should also dismiss this claim as duplicative because Plaintiffs do not allege that the Agreements are invalid but admits that the Agreements are valid and enforceable by attempting to apply various provisions of these Agreements to CardConnect's conduct. *See* Compl. ¶¶ 52-57. Furthermore, as discussed, this challenged conduct is expressly covered by the contract such that Plaintiffs cannot properly plead unjust enrichment in the alternative. *See Calcon*, 159 F. Supp. 3d at 337. This Court should therefore dismiss Plaintiffs' unjust enrichment claim as duplicative of their breach of contract claim.

### 4. The Court Should Dismiss This Action with Prejudice.

Because Plaintiffs cannot cure the defects in their Complaint by amendment, granting Plaintiffs leave to amend would be futile and the Court should dismiss this action with prejudice. *See Moorer v. U.S. Gov't*, 2021 WL 4848013, at *3 (N.D. Fla. Sept. 9, 2021). As Defendants have shown, the Agreements expressly allow CardConnect to withhold fees and assessments and do not contain any language limiting when CardConnect must deduct these amounts from Plaintiffs' monthly Residuals, and none of the provisions Plaintiffs cite apply to this dispute.

91317963.10

Moreover, Fiserv is not a proper party to this litigation because it is not a successor-in-interest to any party to either of the Agreements. Accordingly, Plaintiffs cannot cure their pleading deficiencies and granting leave to amend would be futile. This Court should therefore dismiss this action with prejudice.

**CONCLUSION**

For the reasons stated, Defendants respectfully request that this Court dismiss Plaintiffs' Complaint with prejudice in its entirety.

DATED:  September 25, 2023          Respectfully submitted,

By: */s/ Henry Bolz*
Henry Bolz
Polsinelli PC
315 S. Biscayne Blvd., Suite 400
Miami, Florida 33131
(305) 921-1800
hbolz@polsinelli.com
*Counsel for Defendants*

**LOCAL RULE 3.01(g) CERTIFICATION**

Defendants have attempted to confer in good faith with Plaintiffs' counsel regarding the contents of the foregoing Motion to Dismiss but Plaintiffs' counsel has not responded. Defendants will supplement this Motion with the certification required under Local Rule 3.01(g)(3).

91317963.10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 25, 2023, I electronically filed the foregoing *Defendants' Motion to Dismiss* with the Clerk of the Court using the e-filing system, which will then send a notification of such filing to the attorneys of record in this matter.

<u>  /s/ Henry Bolz    </u>
Henry Bolz

91317963.10